WILLIAMS, Judge.
This is an action to recover insurance proceeds under a homeowners’ insurance policy.
The appellant, Pauline J. Osbon,[1] appeals a trial court judgment denying her claim for insurance benefits, attorney, fees and penalties against the appellee, National Union Fire Insurance Company (National Union).
The evidence at trial showed that Pauline Obson divorced James Osbon in 1968. She purchased a house in 1971 and financed the purchase with a mortgage from Troy and Nichols. The mortgage required that she maintain insurance on her home, and the defendant, National Union, was selected by the mortgage holder as the insurer. The insurance premiums were included in her monthly mortgage payments. In 1978, Appellant remarried James Osbon. The appellant and James Osbon did not enter into a contract changing the ownership status of the house; therefore, it remained Appellant’s separate property.
On February 15, 1990, the house caught fire while the appellant, her husband, James Osbon, and her two young grandchildren were in the home. The fire completely destroyed the house. The damage exceeded the insurance policy limits of $32,-000.00 for dwelling, $16,000.00 for contents and $6,400.00 for loss of use. Appellant *80 filed an insurance claim with National Union for the policy limits.
Appellee, National Union, denied the claim and asserted the affirmative defense of arson.
During the trial, National Union introduced the testimony of an expert witness who opined that the fire had been intentionally set. After the trial, the jury found appellant’s husband, James Earl Osbon, Sr.,[2] “intentionally set or was responsible for the fire.” Interrogatories propounded to the jury and its answers thereto appear in the record:
Do you find by a preponderance of the evidence that the defendant has proven that the plaintiffs house burned as a result of arson? Yes _X No
Do you find by a preponderance of the evidence that the defendant has proven that plaintiffs husband, James Osbon, Sr., intentionally set or was responsible for this fire? Yes _X No _
DISCUSSION
Appellant argues that even if James Os-bon had intentionally set the fire, National Union is not excused from paying the policy benefits to her because she is the named insured in the policy. She contends James Osbon should not have been considered an insured under the policy, and therefore his intentional act could not have voided the policy. Appellant urges, in the alternative, she should be allowed to recover the insurance proceeds because the home was her separate property and because she was an innocent insured.
The homeowners’ insurance policy contains the following provisions:
NAMED INSURED
P.J. Osbon
DEFINITIONS
In this policy, “you” and “your” refer to the “named insured” shown in the Declarations and the spouse if a resident of the same household_ In addition, certain words and phrases are defined as follows:
[[Image here]]
3. “insured” means you and residents of your household who are:
a. your relatives; _
EXCLUSIONS
8. Intentional Loss, meaning any loss arising out of any act committed:
a. by you or at your direction; and
b. with the intent to cause a loss.
The clear and unambiguous terms of a policy of insurance, including exclusions, should be enforced. Murphy v. Louisiana Farm Bur. Mut. Ins., 569 So.2d 637, 639 (La.App. 2d Cir.1990).
Exclusions contained in an insurance policy, when ambiguous, will be construed in favor of the insured. However, tortured constructions of the policy language that seize on every word as a possible source of confusion will not be sufficient to show an ambiguity exists. Id. at 639. Terms and provisions of insurance contracts are to be construed in their general and popular meaning. Benton v. Long Mfg. N.C., Inc., 550 So.2d 859 (La.App. 2d Cir.1989).
Appellant is the only named insured in the insurance policy. Appellant argues that her husband’s act of arson did not void the policy because he was not covered by the exclusion provision. She contends that the policy recognizes a distinction between the named insured and an insured by definition, and only the named insured is covered by the intentional loss exclusion. She reasons that since a number of people can become an insured under the policy, the language of the exclusion limits loss by only covering acts “by you or at your direction.” Plaintiff concludes that the words “you” and “your” as they appear in the exclusion refer only to the nam%d insured.
In essence, appellant asks us to construe one provision of the insurance policy, the exclusion clauses, while ignoring another, *81 the definitions. However, one portion of a contract cannot be construed separately at the expense of disregarding another. Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988). Any other interpretation would amount to a tortured construction of the policy language. Murphy, supra. The exclusionary clause states that the policy does not cover a loss arising out of an act “by you or at your direction” with the intent to cause a loss. The “definitions” section of the policy specifically states that the words “you” and “your” refer to the named insured and the spouse if a resident of the same household. James Osbon was the plaintiffs spouse and was a resident of the home at the time of the fire. Therefore, James Osbon's act was covered by the exclusionary clause.
Having determined that the policy’s exclusionary clause applies to Mr. Osbon, the next issue is whether a legitimate reason exists to disregard the exclusion under the facts of this case.
Appellant argues that as an innocent insured, she should be entitled to recover the insurance proceeds. She cites Williams v. Fire Ass’n of Philadelphia, 193 So. 202 (La.App.2d Cir.1939) as authority for her argument. In the Williams case, a couple’s house burned down while the husband was in prison. Although there was some question as to whether the wife or her boarder were responsible, the court held that the defendant insurer would not be absolved from liability for the ensuing loss unless the insurer could prove the imprisoned husband counseled, suggested or authorized the illegal action. However, there is no indication from a review of the decision that the court in Williams had before it an insurance policy which expressly excluded acts by a named insured or the spouse of a named insured.[3] Therefore, we cannot agree with the appellant that the holding of Williams is controlling under the facts of the instant case.
Appellant vehemently argues that we should follow the jurisprudence of other jurisdictions where the “innocent spouse” doctrine has been adopted.
We have reviewed numerous cases from other jurisdictions, some cited by appellant in brief, others obtained from our own extensive research on this issue. In the 1990 case of Vance v. Pekin Insurance Company, 457 N.W.2d 589 (Iowa 1990), the Supreme Court of Iowa in a well-reasoned opinion discussed the history of the innocent spouse doctrine and explained the legal distinctions in cases where the “innocent insured” was allowed to recover as opposed to cases where the “innocent spouse” was barred from recovery.
Vance and the case authority from other jurisdictions indicate that the courts have developed three distinct theories of recovery to resolve the “innocent spouse” issue.[4] These three theories of recovery emanated from disagreements amongst the various courts over whether property or contract law should govern the interpretation of the insurance policy in question. Vance, supra at 590, citing, The Problem of the Innocent Coinsured Spouse: Three Theories of Recovery, 17 Val.U.L.Rev. 849 (1983).
In Vance, supra, the court analyzed and adopted the third theory of recovery or approach. The court stated:
[The] “property rationale ignores the nature and extent of the parties” rights and duties as expressed by the insurance policy. In recent years courts have developed a new approach. The new approach is often referred to in the cases *82 as the “best reasoned rule.” Under the new approach, recovery depends — not on property rationales or marital relationships — but on a contract analysis of the insurance policy provisions. So familiar principles of interpretation peculiar to insurance policies apply. For example, if the policy language is ambiguous, that language is construed against the insurer.
[[Image here]]
The new approach is seen as the best reasoned rule because under it courts use a contract analysis and have some concerns for equity. We agree and adopt the best reasoned rule.
Under a contract analysis, we conclude for reasons that follow that Susan is barred from recovering under the policy.
Id. at 592 (citations omitted).
We find the third approach is the most appropriate theory on the subject; whether the various state courts will allow an innocent co-insured to recover depends upon the terms of the insurance contract. If there are any ambiguities in the contract, the court will construe the language to allow recovery by the innocent co-insured. See Sales v. State Farm Fire and Cas. Co., 849 F.2d 1383 (11th Cir.1988); Spezialetti v. Pacific Employers Ins. Co., 759 F.2d 1139 (3rd Cir.1985); Bryant v. Allstate Ins. Co., 592 F.Supp. 39 (E.D.Ky.1984); Richards v. Hanover Ins. Co., 250 Ga. 613, 299 S.E.2d 561 (1983); Vance v. Pekin Ins. Co., supra; Grinnelli Mutual Reinsurance Co. v. Voeltz, 431 N.W.2d 783 (Iowa 1988); Woodhouse v. Farmers Union Mut. Ins. Co., 241 Mont. 69, 785 P.2d 192 (1990); Dolcy v. Rhode Island Joint Reinsurance Assn., 589 A.2d 313 (R.I.1991); Felder v. North River Ins. Co., 148 Wis.2d 130, 435 N.W.2d 263 (App.1988). See also, Annotation, Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned By Another Insured, 11 A.L.R.4th 1228 (1987).
This theory of recovery, is analogous to Louisiana’s well-settled principles of law on the subject of the interpretation of insurance policies.
An insurance policy is a contract, and as with all other contracts, it constitutes the law between the parties. Pareti, supra at 420. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Courts have no authority to change the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Id. at 421.
As previously stated, we find no ambiguity in the exclusion clause. Although the results are undeniably harsh for Mrs. Os-bon, the clear meaning of the contract must govern here. The exclusionary clause of the policy applies to both the named insured and the spouse of the named insured who is a resident of the same household. Therefore, National Union is not obligated to pay Mrs. Osbon’s property insurance claim.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs áre assessed to appellant, Pauline J. Osbon.
NORRIS, J., concurs with written reasons.

. This action was instituted by both James Os-bon and the appellant. An amended petition was filed on September 4, 1991, removing James Osbon's name as a party to the suit. The amended petition alleged that the property was Pauline Osbon’s separate property.

. James Osbon, Sr. died approximately one year prior to trial.

. No criminal charges were filed for arson. The firemen who responded to the fire detected no evidence that the fire was of an incendiary origin.

. The first theory of recovery or approach to the innocent spouse or co-insured rule was a determination of whether the co-insured’s property interest were joint and severable as defined under common law. The second theory or approach was to allow the innocent spouse "to rebut the presumption of a joint obligation by proving his or her interests in the property to be severable. Vance, supra at 591-92. Under these two theories of recovery either the marital relationship or the property interest was material and controlling. The application of both theories led to judgments based on the imposition of public policy considerations and unreasonable burdens of proof by the parties.