NOTICE
Decision filed 09/30/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180038

NO. 5-18-0038

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-MR-137 |
| KENT ELMORE and ARDITH SHELDON ELMORE, | ) ) ) | |
| Defendants | ) ) | Honorable Allan F. Lolie, |
| (Kent Elmore, Defendant-Appellant). | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Justice Chapman concurred in the judgment and opinion.
Presiding Justice Overstreet dissented, with opinion.

**OPINION**

¶ 1    Defendant Kent Elmore was severely injured while unloading a grain truck which was owned by his father, Ardith Sheldon Elmore (Sheldon), and insured by plaintiff, State Farm Mutual Automobile Insurance Company (State Farm). Kent filed a claim seeking damages for his injuries under Sheldon's State Farm auto policy. State Farm then filed this action, seeking a judgment declaring that the "mechanical device" exclusion in the auto policy was applicable and barred coverage for Kent's injuries. State Farm and Kent filed cross-motions for summary judgment. The

1

circuit court found that the "mechanical device" exclusion was unambiguous and enforceable, and entered a summary judgment in favor of State Farm. Kent now appeals.[1]

¶ 2    On appeal, Kent contends that the circuit court erred in denying his motion for summary judgment and granting State Farm's motion for summary judgment because the "mechanical device" exclusion in the State Farm auto policy was ambiguous and contrary to the purpose of the mandatory motor vehicle liability laws of Illinois. For reasons that follow, we reverse the order of the circuit court entering a summary judgment for State Farm and denying Kent's motion for summary judgment. Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter a summary judgment in favor of defendant, Kent Elmore.

¶ 3                              I. BACKGROUND

¶ 4    On October 16, 2013, Kent was helping his father, Sheldon, harvest corn from one of Sheldon's fields. At one point during the day, Kent was helping transfer a load of corn from Sheldon's grain truck into a transport truck. A grain auger with a hopper attached at its lower end was being used to collect and move the corn from the grain truck into the transport truck. Kent backed the grain truck up to the auger so that the auger's hopper abutted the rear of the truck. The auger's hopper was located directly beneath the grain truck's dumping shoot. As the corn was being emptied from the dumping shoot into the hopper, the rotating auger blades would draw corn from the hopper and carry it up toward the top of the auger, eventually depositing it into the transport truck. The auger was powered by a tractor equipped with a "power take off" (PTO) shaft. After Kent aligned the hopper under the dumping shoot, Kent grabbed two levers located on the back gate of the grain truck in order to open it and release the corn out of the truck and into the hopper. Kent wanted

---

[1]Ardith Sheldon Elmore did not appeal the judgment, and he has not entered an appearance or otherwise participated in this appeal.

extra leverage to open the truck's back gate, so he stepped up onto the auger. The protective shield covering the auger's moving parts had been removed. As Kent stepped up onto the auger, his right foot became entangled in the turning auger blades. Kent suffered a traumatic amputation of his right leg above the knee.

¶ 5    Sheldon had furnished the grain truck and the auger-hopper equipment that Kent was using at the time he was injured. The grain truck, a 2002 Ford International 4900, was owned by Sheldon and insured under an auto policy issued by State Farm. Sheldon was a named insured on the policy.

¶ 6    On March 31, 2016, Kent filed a negligence action against Sheldon seeking to recover for his injuries under Sheldon's auto policy. On November 1, 2016, State Farm filed this declaratory judgment action asking the court to determine the rights and liabilities of the parties under the terms and provisions of the auto policy. In the original complaint for declaratory judgment, State Farm asserted that there was no coverage under the auto policy because Kent's injury was caused by an auger, and the auger was neither a car nor a trailer, and was thus not an insured vehicle within the meaning of the auto policy. On January 6, 2017, State Farm filed an amended complaint adding an allegation that the auger was a mechanical device and was thereby excluded from coverage under the "mechanical device" exclusion ("Endorsement 6018GG.1.") in the policy. A certified copy of the State Farm policy in effect at the time of the occurrence was attached to the complaint for declaratory judgment.

¶ 7    The Declarations Page of the State Farm policy identified the insured vehicle as a 2002 International Model 4900 truck to be used in farming operations. The Declarations Page also showed that the bodily injury liability limits were $250,000 per person and $500,000 per accident. The following policy documents were attached to the Declarations Page: "State Farm® **Car Policy** Booklet"; two endorsements identified as "**6018GG. COMMERCIAL VEHICLE**" and

3

"**6018GG.1 COMMERCIAL VEHICLE**"; an endorsement identified as "**6913B AMENDATORY ENDORSEMENT**"; and a one-page document entitled "**6055ZZ FARM TRUCK (Coverage While Towing Trailers and Farm Implements)**."

¶ 8     The liability section of the State Farm® **Car Policy** Booklet provided in pertinent part:

"**LIABILITY COVERAGE**

\*\*\*

**Additional Definition**

**Insured** means:

1.     *you* and *resident relatives* for:

    a.   the ownership, maintenance, or use of:

        (1)     *your car*;

\*\*\*

3.     any other *person* for his or her use of:

    a.     *your car*:

        Such vehicle must be used within the scope of *your* consent;

* * *

**Insuring Agreement**

1.     **We** will pay:

    a.     damages an *insured* becomes legally liable to pay because of:

        (1)     *bodily injury* to others; and

4

(2)      damage to property caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy."

¶ 9      The "mechanical device" exclusion referenced in State Farm's amended complaint was set forth in the endorsement identified as "**6018GG.1 COMMERCIAL VEHICLE**." The preface to the endorsement indicates the endorsement is a part of the policy, and further provides: "Except for changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement." Subsection b of the Liability Coverage section of the endorsement adds four categories of policy exclusions, including the following "mechanical device" exclusion.

"**LIABILITY COVERAGE**

**\*\*\***

b.      **Exclusions**

\* \* \*

(4)      THERE IS NO COVERAGE FOR AN ***INSURED*** FOR DAMAGES RESULTING FROM:

\* \* \*

(c)      THE MOVEMENT OF PROPERTY BY MEANS OF A MECHANICAL DEVICE, OTHER THAN A HAND TRUCK, THAT IS NOT ATTACHED TO THE VEHICLE DESCRIBED IN (a) ABOVE."

¶ 10      On October 20, 2017, State Farm filed a motion for summary judgment and a supporting memorandum. In its pleadings, State Farm stated that it had denied coverage for Kent's injuries based on the "mechanical device" exclusion in the commercial vehicle endorsement (Endorsement 6018GG.1) to the policy.

¶ 11    In its supporting memorandum, State Farm described its version of the unloading process as follows:

> "An auger was being utilized to move grain into the transport truck. A tractor powered the auger by means of a PTO shaft. As the auger turned, it would pull the grain up and dump it into the semi-truck. The auger featured a 'hopper' which would receive the grain from the grain trucks. The auger's hopper was directly underneath the dumping shoot for the grain truck."

State Farm argued that Kent was injured while using the grain auger, that the grain auger was a "mechanical device" within the meaning of the policy, and that because Kent's injuries resulted from the movement of property by means of a "mechanical device, other than a hand truck," there was no coverage under the policy for the occurrence. Noting that this was a matter of first impression for Illinois courts, State Farm pointed to decisions from other jurisdictions in which reviewing courts found similar "mechanical device" exclusions valid and enforceable. A certified copy of the State Farm auto policy was attached in support of the summary judgment motion.

¶ 12    On December 4, 2017, Kent filed his motion for summary judgment and opposition to State Farm's motion for summary judgment. Kent argued that the policy provided coverage for the occurrence because he was using the grain truck to unload corn at the time of the injury, and there was a causal connection between the use of the insured vehicle and his injury. Kent further argued that the "mechanical device" exclusion was confusing and violated the public policy underlying the mandatory motor vehicle liability insurance laws in Illinois. Kent agreed that there were no Illinois cases addressing this exclusion and pointed to decisions from other jurisdictions in which courts determined that similar "mechanical device" exclusions were contrary to the state's omnibus insurance laws.

6

¶ 13    On December 6, 2017, the circuit court held a hearing on the cross-motions for summary judgment. During the hearing, State Farm's attorney advised the court that if State Farm did not have the "mechanical device" exclusion in the policy, "there would be coverage" for Kent's injuries. The court took the matter under advisement.

¶ 14    On January 2, 2018, the circuit court issued an order granting State Farm's motion for summary judgment and denying Kent's motion for summary judgment. The court found that the auger was a "mechanical device" and that the "mechanical device" exclusion was not ambiguous. The court also found that the "mechanical device" exclusion did not violate the law or the public policy underlying mandatory insurance laws in Illinois. Citing *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121 (2005), the court determined that Illinois public policy does not preclude insurers from having reasonable exclusions, like the "mechanical device" exclusion, so long as the exclusion does not differentiate between the insured and permissive users. The court found that the exclusion at issue made no such distinction and concluded that *Progressive Universal* was controlling.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, Kent contends that the circuit court erred in entering summary judgment in favor of State Farm and denying his motion for summary judgment. Kent argues that the "mechanical device" exclusion in the endorsement to the State Farm auto policy is ambiguous and contrary to the public policy underlying the mandatory liability insurance laws in Illinois.

¶ 17    Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmoving party, show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012). The construction of an insurance policy and a

determination of the rights and obligations thereunder are questions of law for the court, and thus, are appropriate for disposition by summary judgment. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010). Additionally, whether the insurance policy comports with statutory requirements presents questions of law properly decided on a motion for summary judgment. *Schultz*, 237 Ill. 2d at 399. Orders granting or denying summary judgment are subject to *de novo* review. *Progressive Universal*, 215 Ill. 2d at 128. *De novo* review is also appropriate where the resolution of an appeal turns on questions of statutory and contractual interpretation. See *Progressive Universal*, 215 Ill. 2d at 128.

¶ 18    When interpreting the language of an insurance policy, we apply the general rules governing the interpretation of contracts. *Schultz*, 237 Ill. 2d at 399. A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Schultz*, 237 Ill. 2d at 400. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the policy's terms are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). Alternatively, if the policy terms are susceptible to more than one reasonable meaning or are " 'obscure in meaning through indefiniteness of expression,' " the terms are ambiguous and will be strictly construed against the drafter. *Central Illinois Light Co.*, 213 Ill. 2d at 153 (quoting *Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 330 (2004)).

¶ 19   Parties to an insurance contract may agree to the scope of coverage and which risks are excluded from coverage, but the risks excluded must be set forth in clear and unambiguous language. *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, ¶ 12. The insurer bears the burden to affirmatively demonstrate the applicability of an exclusion. *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006). If the language in a policy provision limiting the insurer's liability is unambiguous, the provision will be applied as written, unless it contravenes public policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Provisions that limit or exclude coverage are interpreted liberally in favor of the insured and against the insurer. *Munoz*, 237 Ill. 2d at 433. A court will neither strain to find an ambiguity where none exists nor adopt an interpretation which rests on tenuous distinctions that the average person, for whom the policy is written, cannot be expected to understand. *Munoz*, 237 Ill. 2d at 433. An insurance contract is not to be interpreted in a factual vacuum. *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 336 (1974). A term that appears unambiguous at first blush might not be so when viewed in the context of the particular factual setting in which the policy was issued. *Glidden*, 57 Ill. 2d at 336.

¶ 20   Throughout the proceedings in the circuit court and on appeal, State Farm has stated that if not for the "mechanical device" exclusion, there would be coverage for this occurrence. Therefore, we must determine whether the exclusion is valid and enforceable. Initially, we consider Kent's claim that the "mechanical device" exclusion is ambiguous.

¶ 21   The "mechanical device" exclusion at issue is set forth in commercial vehicle endorsement **6018GG.1 Commercial Vehicle**. Subsection b.(4)(c) of that endorsement provides that there is no liability coverage for damages resulting from "the movement of property by means of a mechanical

9

device, other than a hand truck, that is not attached to the vehicle described in (a) above."[2] The term "mechanical device" is not defined in the endorsement or the policy.

¶ 22    As noted earlier, State Farm and Kent have both indicated that they found no reported decisions in which an Illinois court has construed this "mechanical device" exclusion. Thus, this appears to be a matter of first impression. It is State Farm's position that the mechanical device exclusion is clear and unambiguous. State Farm has suggested that any tool that is used with, or that has a relationship to machinery, may be deemed a "mechanical device." During the hearing in the circuit court, State Farm argued that courts in other jurisdictions have found that similar "mechanical device" exclusions were unambiguous and barred coverage for injuries resulting from the use of various devices. State Farm cited the following decisions in support of its argument: *Continental Insurance Co. v. American Motorist Insurance Co.*, 542 S.E.2d 607 (Ga. Ct. App. 2000) (a pallet jack, with a hydraulic pumping mechanism, was found to be a "mechanical device other than a hand truck" within the meaning of a business auto policy); *Elk Run Cove Co. v. Canopius U.S. Insurance, Inc.*, 775 S.E.2d 65 (W. Va. 2015)[3] (front-end loader was treated as a "mechanical device," for purposes of construing an auto exclusion in a CGL policy); *Dauthier v. Pointe Coupee Wood Treating, Inc.*, 560 So. 2d 556, 558 (La. Ct. App. 1990) (forklift was classified as "mechanical device"). State Farm also invited the circuit court to adopt the *Dauthier* court's definition of "mechanical device." *Dauthier*, 560 So. 2d at 558.

¶ 23    In *Dauthier*, the decedent had driven a truck full of pilings to a wood treating company where they were to be unloaded. While the decedent was using a forklift to unload the pilings from the

---

[2]While this exclusion refers to the "vehicle described in (a) above," subsection (a) of the endorsement is a definitional subsection, and there is no vehicle defined or described in that subsection. Further, there seems to be no correlative subsection (a) in the policy. This obscure reference alone creates confusion within this paragraph of the policy.

[3]In *Elk Run Cove Co.*, the Supreme Court of Appeals of West Virginia found the trial court had erred in in applying the auto exclusion provision under the facts of that case. 775 S.E.2d 65.

truck, the forklift became unbalanced. Decedent, along with two others, attempted to stand on the back of the forklift to balance it, but the forklift tipped over. The decedent was thrown to the ground and suffered fatal injuries. *Dauthier*, 560 So. 2d at 557. Decedent's widow filed suit against the owner of the truck. The truck was covered under a business auto policy. The policy contained an exclusion for " '[b]odily injury or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered auto.' " *Dauthier*, 560 So. 2d at 557. Dauthier argued that the "mechanical device" exclusion in the business auto policy was ambiguous and that the policy did not clearly establish what constituted a "mechanical device." The Louisiana Court of Appeal consulted Webster's New World Dictionary (3d College ed. 1988), which defined "mechanical" as " 'having to do with, or having skill in the use of, machinery or tools' " and "device" as " 'a mechanical invention or contrivance for some specific purpose.' " *Dauthier*, 560 So. 2d at 558. The *Dauthier* court found that a "mechanical device" is generally understood to be "an invention or contrivance having to do with machinery or tools." *Dauthier*, 560 So. 2d at 558. The court acknowledged that the term "mechanical device" was "a very broad term," but found no indication the parties to the insurance contract intended otherwise. *Dauthier*, 560 So. 2d at 558. The court concluded that the forklift fit "within the generally prevailing meaning" of the term "mechanical device," and that the exclusion was not ambiguous. *Dauthier*, 560 So. 2d at 558.

¶ 24　In *Dauthier*, and the other cases cited by State Farm, the devices at issue, *i.e.*, the forklift, the hydraulic pallet jack, and the front loader, were self-powered or motorized machines used in commercial settings. There would be very little dispute as to whether these were, or were not, mechanical devices, considering the circumstances. In contrast, the auger in this case was not self-powered or motorized. Standing alone, the auger was simply a large cylindrical structure with metal helical blades. The auger had no ability to turn and move grain without an external power source,

11

and its blades turned only if attached to the tractor's PTO shaft. Even then, the auger would not work effectively to pull the grain unless the RPMs of the tractor were increased, depending on the weight of the grain in the hopper. Thus, we find that the cases cited by State Farm are factually distinguishable.

¶ 25　State Farm has argued that any tool that is used with, or that has a relationship to machinery, may be deemed a "mechanical device." Under State Farm's expansive definition of the term "mechanical device," liability coverage would be afforded only for injuries arising when grain is unloaded from the insured truck by hand or by a hand truck. As with other terms in the exclusion, the term "hand truck" is not defined. "Hand truck" is defined in Merriam Webster's Collegiate Dictionary 565 (11th ed. 2014) as "a small hand-propelled truck." Webster's Third International Dictionary 1028 (1971) defines "hand truck" as "a small hand-propelled truck or wheelbarrow."

¶ 26　An insurance policy must be interpreted to give effect to the mutual intention of the parties. It is not to be interpreted in a vacuum. Our supreme court has long held that when determining whether an ambiguity exists, courts should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties and the predominate purpose of the contract. *Dora Township v. Indiana Insurance Co.*, 78 Ill. 2d 376, 378 (1980); *Glidden*, 57 Ill. 2d at 336. Here, the 2002 International grain truck insured by State Farm was intended to be used for farming purposes. This intent is plainly identified on the Declarations Page of the policy. Considering that the insured truck would be used for farming purposes, the parties could not have contemplated that a wheelbarrow "device" would be a reasonably feasible or effective method for unloading grain from the large grain truck identified on the Declarations Page. Under State Farm's interpretation of the policy exclusion, there is, in effect, no coverage at all for the unloading of grain from this 2002 grain truck, except for injuries arising while unloading the grain with a hand truck. This interpretation

12

would lead to an absurd result. Even if ascribing such an expansive definition of the term "mechanical device" within a commercial endorsement was a customary use or practice within the insurance industry, there was certainly no evidence or argument that the customary exclusion was commonly known to purchasers of auto insurance, such as Sheldon Elmore. This case does not involve a dispute between two insurance companies. The language of an insurance policy should be viewed from the standpoint of an average lay person who is untrained in complexities of the commercial insurance industry.

¶ 27 Finally, ascribing the insurer's overly broad interpretation to the term "mechanical device" would allow the insurer to unilaterally decide whether a particular device is, or is not, a "mechanical device" after the loss has occurred. We cannot conclude that the parties contemplated that the "mechanical device" exclusion would be given such a broad effect.

¶ 28 After considering the policy as a whole and taking into consideration the type of insurance for which the parties contracted, and the subjects, risks, and purposes of the insurance, we find that the "mechanical device" exclusion is overly broad and vague, and does not permit the average policyholder to discern which devices used in the loading and unloading process would trigger the exclusion and result in a denial of coverage. It bears repeating that an exclusion must be set forth in clear and unambiguous language. This policy does not do that. The insured could not have understood, with clarity, what devices were, or were not, included in the exclusion. We find that the term "mechanical device" is ambiguous, as that term was undefined, overly broad, and vague. Therefore, the "mechanical device" exclusion must be construed against the insurer and in favor of coverage. Given our disposition of this issue, we need not consider Kent's remaining arguments.

13

¶ 29                                      III. CONCLUSION

¶ 30    Policy exclusions must be specific and clear in order to be enforced. In this case, we find that the language in the "mechanical device" exclusion is overly broad and ambiguous. The exclusion must therefore be construed in favor of coverage. Accordingly, the order of the circuit court entering summary judgment in favor of State Farm and denying the summary judgment motion by defendant, Kent Elmore, is reversed. Pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we enter summary judgment in favor of defendants.

¶ 31    Reversed; judgment entered for defendants.

¶ 32    PRESIDING JUSTICE OVERSTREET, dissenting:

¶ 33    I respectfully dissent. I agree with the trial court that the exclusion found in section (b)(4)(c) of the policy, which excludes liability coverage for an insured for damages resulting from the movement of property by means of a mechanical device that is not attached to the vehicle, applies. Here, it is undisputed that the auger was not attached to the insured vehicle, and the defendant concedes that "[t]here is little doubt that the auger [was] a [']device.[']" The grain auger was being utilized to transfer grain from the grain truck into the transport truck. As the auger turned, it pulled the grain up and dumped it into the semi-trailer truck for transport. Considering the plain and ordinary meanings of the words "mechanical," "device," and "auger," I would conclude that the only reasonable interpretation is that the grain auger, operated by the tractor, was a "mechanical device." See https://merriam-webster.com/dictionary/device ("device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function"); https://www.merriam-webster.com/dictionary/mechanical ("mechanical" is "of or relating to machinery or tools" or "produced or operated by machine or tool"); see also https://merriam-webster.com/dictionary/auger ("auger" is "any of various tools or devices with a helical shaft or part

14

that are used for boring holes \*\*\* or moving loose material"). I disagree with the majority's interpretation that the auger was not a mechanical device because it was not self-powered or motorized. See *Lindstrom v. Houzenga*, 177 Ill. App. 3d 1, 2 (1988) (auger described as "mechanical device[ ] by which grain is moved from one bin to another"); *Allen v. Kewanee Machinery & Conveyor Co.*, 23 Ill. App. 3d 158, 158 (1974) (auger described as "device used in the moving and lifting of grain," which is placed into one end of the auger and "by mechanical means" conveyed by the auger to the discharge point).

¶ 34    I also disagree with the majority's conclusion that the "mechanical device" exclusion is ambiguous because the term is overly broad and vague. That the exclusion could conceivably apply in other factual circumstances does not mean that the exclusion is ambiguous as to the grain auger. See *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 440 (2010) ("That the exclusion could conceivably apply in other factual circumstances does not mean that the exclusion is ambiguous as to unlicensed drivers."); *Joe Cotton Ford, Inc. v. Illinois Emcasco Insurance Co.*, 389 Ill. App. 3d 718, 723 (2009) (language of exclusion may be broader than in other policies, but that does not make the language ambiguous); *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 721 (1995) (although "arising out of" policy language has been held to be broad and vague, it is not ambiguous). Instead, the policy's terms are clear and unambiguous and must be given their plain, ordinary, and popular meaning. See *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The "mechanical device" exclusion at issue here clearly and unambiguously applies to the facts established by the record on appeal. See *Joe Cotton Ford*, 389 Ill. App. 3d at 723.

¶ 35    I believe that the majority's conclusion merely restricts the parties' freedom to make their own contracts and exclude certain risks from liability coverage, and this conclusion is contrary to supreme court law (*Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance*

*Co.*, 215 Ill. 2d 121, 136 (2005) (Illinois law does not "expressly forbid parties to an insurance contract from excluding certain risks from liability coverage")), which we are bound to follow (*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004) ("After our supreme court has declared the law with respect to an issue, this court must follow that law, as only the supreme court has authority to overrule or modify its own decisions.")). Pursuant to the "mechanical device" policy exclusion, there is no liability coverage for an insured or a permissive user if the damages result from the movement of property by means of a mechanical device not attached to the insured vehicle. See *Founders Insurance Co.*, 237 Ill. 2d at 445 (upheld exclusionary provision that applied equally to both named insureds and permissive drivers). "Just as public policy demands adherence to statutory requirements, it is in the public's interest that persons not be unnecessarily restricted in their freedom to make their own contracts." *Progressive Universal Insurance Co*. 215 Ill. 2d at 129 (neither the language of the mandatory liability insurance statute nor the rules of statutory construction will support conclusion that insurers are forbidden from excluding certain types of risks from coverage).

¶ 36    I would thus conclude that the circuit court properly entered summary judgment in favor of State Farm, finding that its liability coverage excluded damages for Kent's injuries, which were sustained as a result of the movement of property by means of a mechanical device not attached to the vehicle for which the insured was provided liability coverage.

16

2019 IL App (5th) 180038

NO. 5-18-0038

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-MR-137 |
| KENT ELMORE and ARDITH SHELDON ELMORE, | ) ) ) | |
| Defendants | ) ) | Honorable Allan F. Lolie, |
| (Kent Elmore, Defendant-Appellant). | ) | Judge, presiding. |

_____

**Opinion Filed:** **September 30, 2019**
_____

**Justices:**    Honorable Judy L. Cates, J.

Honorable Melissa A. Chapman, J.,
Concurs
Honorable David K. Overstreet, P.J.,
Dissents
_____

**Attorneys**    Christopher A. Koester, Kara J. Wade, Taylor Law Offices, P.C., 122 East
**for**    Washington Avenue, P.O. Box 668, Effingham, IL 62401
**Appellant**
_____

**Attorneys**    Michael J. Bedesky, Martin K. Morrissey, Reed, Armstrong, Mudge &
**for**    Morrissey, P.C., 115 N. Buchanan, P.O. Box 368, Edwardsville, IL 62025
**Appellee**
_____